The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the Court is now sitting. God save the United States and its Honorable Court. Good morning. Ms. Adjuan, you may proceed. Thank you, Chief Judge Gregory, and may it please the Court. The District Court below stated that it was, quote, troubled by what occurred, end quote, in the state court proceedings in this case, noting that they were unusual in many ways. Quincy Allen's capital trial was plagued by a series of significant constitutional errors, beginning with the guilty plea process and continuing throughout the penalty phase. These errors were not redressed in the state court system solely as a result of unreasonable applications of clearly established Supreme Court law and unreasonable factual determinations. While I am, of course, prepared to answer questions about any of the five claims before the Court, I was intending, if I may, to begin by discussing Claim 3 from our brief, which is the claim that the trial judge misapplied the relevant standard for considering mitigating evidence and thereby failed to appropriately consider or give effect to any of Mr. Allen's mitigating evidence, and then proceed to discuss Claim 1 from our brief regarding the involuntary nature of Mr. Allen's guilty plea as a result of the unfulfilled assurance from the trial judge of a life sentence. So, as to Claim 3, there are really two fundamental problems with the trial judge's sentencing analysis in this case. First, the trial judge improperly restricted his consideration of mitigating evidence to evidence that touched on Mr. Allen's mental state at the time of the trial and at the time of the crime. And second, the trial judge, even within that restricted framework, employed an unreasonably high unconstitutional burden for the evidence, the competency to be executed standard. So, we are, of course, here in this Court, viewing everything through the lens of AEDPA, and both of these constitutional errors, the state courts were unreasonable under both D1 and D2 in failing to correct them. Counsel, counsel, counsel, can I ask you a question? So, your position is that that claim that you just outlined, that the judge improperly restricted himself to mental state at the time of the crime and at trial, and within that, the standard was too high, that that claim was adjudicated by the state court? The state PCR court addressed that claim? So, they did, Your Honor, via an ineffectiveness argument and an effective assistance of counsel argument in PCR. I actually think it's a close question as to whether the underlying constitutional claim is before this court. We raised it, at least as I view it, as both the underlying claim in our habeas petition and here in this court, as well as the ineffectiveness claim that goes along with it. And the state, the warden, conceded that it was exhausted. So, to the extent the court, you know, wishes to rely on the state's concession of exhaustion, they're both before this court. But I fundamentally don't think that it makes a big difference either way, because the state court adjudicated the ineffectiveness claim solely on the ground that there was no underlying constitutional violation. So, you think your position is the AEDPA deference standard applies to this claim because the state court adjudicated it in the course of adjudicating the ineffective assistance claim? I think that's fair, Your Honor. They specifically said that the underlying claim did not have merit. And as a result, there was no, there was no ineffectiveness. So, yes, I think that that's fair. So, in any event, there are two constitutional issues, excuse me, two issues with both of these aspects of the case. So, Eddings v. Oklahoma and Tenard v. Jack Key all render this claim, all make clear that there was an Eighth Amendment issue with this claim. So, Lockett says that the capital sentencer cannot be precluded from considering any aspect of the defendant's character and record that may serve as a basis for a sentence less than death. Eddings says that a sentencer cannot give such a sentence. Tenard says that you cannot impose the nexus requirement between the crime and the mitigating evidence, which is really exactly what the trial judge did here. So, I'd like to focus, if I may, on Eddings, which I think is really strikingly similar to this case. It was also a bench trial, and the claim at issue there really turned on just a single sentence from the trial judge's oral sentencing in that case, where he found that he did not believe he could consider any aspect of the defendant's background as a matter of law. Here, we have multiple statements from the trial court that he was focused exclusively on the mental state of the crime and at the time of the trial, and also that he was imposing the singleton standard of competency to be executed, which is just, it's an extreme standard, frankly. It is far, far, far higher than anything that would apply to mitigating evidence in the context of a capital trial. So, in Eddings... Are those, counsel, are the statements you referred to from the sentencing judge, are you referring to statements in the letter that the judge filed in response to the promise accusation, or are you referring to something at the sentencing? There are numerous things, Your Honor, I think both, in addition to the report of the trial judge, which was also post-trial. So, there is, of course, the sentencing itself, where the court specifically focused on mental state at the time of trial and the crime, where the court explicitly discussed, quoted, and then applied the singleton standard, and where the trial judge stated that the defense was raising mental illness as its reason in the singular, or avoiding the death penalty. So, that all occurred at the sentencing itself. There was also the report of the trial judge, where the only thing that was discussed was the mental health evidence, and the judge specifically noted that he didn't find any mitigating circumstances. And then, of course, there was the affidavit, which came several weeks after that, where he specifically... I thought there was a statement at the sentencing where the judge acknowledged that he considered the background testimony, the testimony about the defendant's background and upbringing. Unquestionably, there was, Your Honor. The trial judge did say that he considered the background evidence from Ms. Gray, the defense social worker. But if I may point, Your Honor, to Lockett, in Lockett, which dealt with the Ohio death penalty statute, there was a similar indication in the statute that said, the sentencer shall consider everything with respect to the defendant's background, but then kind of restricted it to these three very narrow mitigating circumstances. So, the fact that there's just sort of this general indication that that was considered doesn't answer the question. It ultimately has to be considered under the actual appropriate standard, which is anything that could serve as a basis for a sentence less than death, and not solely mitigating evidence that has a nexus to the crime itself. So, you think the judge acknowledged that evidence, but then excluded it from his consideration? I think that the judge... Am I understanding you correctly? I think that the judge... I mean, I'm not suggesting that the trial judge was stating inaccurately his thought process, but I'm saying he considered it only as it went to these narrow issues of mental state at the time of the crime. So, that consideration, although genuine probably on the behalf of the trial judge, was ultimately meaningless because the fact, for example, that Mr. Allen's mother refused to get a medication when he was a 19 month old baby, and he, as a result, developed pneumonia, has nothing to do with his mental state at the time of the trial. So, the consideration was in effect illusory. So, the mere fact that he stated he considered it doesn't change the fact that we know that he was explicitly applying an incorrect standard, which is the issue. And... And is it correct that defense counsel argued those cases about mental state in its... Before the sentencing judge, that defense counsel brought up those cases and argued the cases that the judge then addressed? Is your honor referring to Adkins and Roper and Ford versus Wainwright or Singleton? I believe, I don't have it right in front of me, but I believe it was the Roper line, those cases where the... Those were actually argued and the judge then addressed them in light of counsel's argument. That's correct, your honor, but it still does not... Neither Adkins, nor Roper, nor Ford versus Wainwright have anything to do with mental state at the time of the crime or mental state at the time of trial. Those are categorical bars to the death penalty. And so, they were really beside the point. So, the fact that counsel argued them may have been why the trial judge referenced them in his claim, which is his focus on the nexus to the crime and the Singleton standard. If I could just say a word about the Singleton standard, that was the only standard that the trial judge referenced in terms of mental health evidence. There was no other standard other than comparing it to other competency to be executed standards. And so, there's really no reason to think that he did anything but apply that standard directly, which he explicitly stated that he did. Counsel, can I ask you just to clarify something for me about exactly what your claim is? And it was helpful to me, your introduction. You said, the first problem is the judge only looked at evidence that would go to mental state at the time of trial and the time of crime. And then you said, and this is my question, within that framework, he set the standard too high at competency to be executed. And as I read the transcript, it looked to me that it was slightly more complicated than that, that at the time of trial, he was talking about competency to be executed. But I would have thought your argument was that to the extent he was looking at mental state at the time of the crime, that's where he made the nexus error. He was only looking to evidence of a mental illness so severe that you could attribute the crime to the mental illness. But you think at that stage too, he was asking, at the time of the crime, was there a mental illness that would render him death ineligible? Or is that the same thing? What am I? I think both are true, your Honor. It is a little bit confusing. I agree, because the trial judge is not particularly clear in what he is applying, other than that Singleton is the only thing he states. And he says, there is no guidance for how to consider mental illness in the context of capital sentencing. So I can only look to Singleton as a guide. And he didn't identify some separate standard for the trial determination versus the time of the crime determination. Singleton is the only one that he said. Okay. So can I, so as you just said, like the trial judge, and I'm not trying to fault anyone, this transcript is hard to sort of get your hands around because there's not a lot of place setting, which is fine. But that sort of brings me back, I guess, to my first question. The cases you're relying on, like Eddings, those are direct review cases, right? Where if the transcript is ambiguous, of course, you send it back. It's a death case. Let's get this thing So to the extent there's ambiguity, and the PCR court has looked at the same transcript and said, here's how we're construing it. You know, it's a different inquiry. If it's ambiguous, that's sort of a classic case for epidepherence. Your Honor, I don't think I respectfully disagree that it's ambiguous. I think that the court said over and over and over again, that he was focused on the trial and the time of the crime. He says, I would just like to alert the court to one other place in the record that we didn't identify in our briefs. But at page 800 of the joint appendix, the state actually objects to a portion of Dr. Crawford's testimony about saying, you know, this goes to mental state at the time of the crime. That really has nothing to do with this case. And the judge says, I think that's the ultimate issue in this case. So there again, he says it in his post-trial affidavit. He was very clear, you know, I needed to be convinced that Mr. Allen was so mentally ill at the time of the crime and so mentally ill at the time of trial that his execution would violate the Eighth Amendment. I just don't think that that's ambiguous at all. So the state court was unreasonable in suggesting, I mean, the state court didn't even find it ambiguous. They just found, well, that's not what he did. I think it is the exact opposite of that. And again, I agree that Eddings is, for example, a direct review case, but I would point the court to both the dissent and Justice O'Connor's concurrence in Eddings. The dissent reads almost exactly like the state court opinion in this case. They say, well, you know, that was an ambiguous comment, or at least it could have been, um, uh, you know, what the, what the judge was really probably saying was that he considered the evidence, but gave it little weight. Um, and of course the Eddings court rejected that. And Justice O'Connor in her concurrence specifically stated that, uh, Woodson and Lockett require any ambiguity to be resolved in the favor of the defendant to ensure that all mitigating evidence was valid. So even though those were direct appeal cases, the established federal law is that those ambiguities are required to be, uh, resolved in favor of the defendant. Um, so, uh, so it was unreasonable, uh, within the, within the, uh, I would also point again to the, uh, the determination that they made that the judge actually considered everything, but gave it little weight. He expressed and stated that he found no mitigating circumstances. Uh, yet we know that the judge believed that the mitigating circumstances were factually established because he in fact held Mr. Allen's, uh, abusive childhood against him, uh, as we set forth, forth in claim four. So he believed it was factually true, but just didn't find it as a mitigating circumstance. That's a question. Does it help your argument under AEDPA that the, um, state PCR court appears to have looked only at the transcript in resolving this question and not other evidence in the record, like the report and the affidavit? Absolutely, Your Honor. I think that they, you know, the, the opinion of the PCR court is extremely short in this claim, uh, as compared to its opinion with respect to the other claims. And they really focused very narrowly on that transcript without considering everything else, exactly as Your Honor said. And, uh, and that was unreasonable because they basically ignored very straightforward evidence that the trial judge was in fact applying the wrong standard. Um, I see that I'm almost out of time. All right. Thank you, Mr. Edgerton. Ms. Brown. Thank you, Your Honor. May it please support Um, Mr. Allen, I've presented five issues and all of those five issues were considered by the state courts, either in, um, the trial court level, direct appeal, or PCR court and PCR appeal. And that prompts the deference provisions of 2254D. It also prompts the provision of 2254E1, and that is that the factual findings are presumed correct. And of course, there are some credibility rulings within each of these issues. And this court has said, uh, for that particular fact finding, the error has to be stark and clear to jettison the, um, state court's finding. So the question that we have on all of these issues would be, is the ruling objectively unreasonable? Was that ruling so obviously wrong that it's beyond any possibility of fair-minded disagreement? And the warden would respectfully submit that that cannot be based on this record. The state court records support that Mr. Allen's plea was voluntary, that Mr. Allen was not denied effective counsel, that Mr. Allen was not denied any kind of process, and Mr. Allen was not denied an effective counsel. He had no expectation, and that really was the finding that, uh, was dispositive in, uh, the involuntary plea issue and in the ineffective assistance of counsel linked to that issue. Um, so in essence, no relief is due, and it's not due because of the strength of the state court record and the deference. Counsel, counsel, can I ask you a question that will sort of, I think, take us from the guilty plea over to the mitigation evidence. Um, and this is my biggest concern about the case. On the guilty plea side, you know, the PCR court found, and you want us to defer to this finding, that there was no promise. The judge obviously indicated that he was inclined to sentence to life, but it was conditional on this one key thing, which was that counsel could prove up serious mental health issues that would persuade him to then give a life sentence. So that's how we dispose of that. But if what happens after that is that the judge applies the wrong standard to the mitigating evidence so that even though counsel reasonably believed, I can prove my case, it turns out she can't because the judge used the wrong standard, then in the context of this case, that would be a particularly concerning mistake to have made, right? Because it would throw into question sort of the whole problem. Do you see what I'm saying? Um, I think I do. And if I can kind of deconstruct, go back to the actual mitigation case, I think that it's important to remember that the judge didn't have to set all this out. He was sort of giving a glimpse into the way that he was looking at different pieces of evidence. He did not make a but he was trying to address what was said to him. And if I could... Okay. So counsel, sorry, and I just, I don't mean to interrupt, but I think it would be really helpful to me to make sure I'm understanding what you're saying, because I think it may narrow sort of the differences between you all. So you are not saying that if in fact the judge said, I will only look at mitigating evidence to the extent it bears on state of mind at the time of crime or death eligibility today, that that would be okay. You're saying that's not what happened. That is not what happened. That is correct. That is not what happened. And I would point to counsel's own argument at the joint appendix 1564 to 1565. The reason we are here would be the crimes and the best evidence he is mentally ill that we could ever present to you for the crimes. And then she discussed the crimes in context. So if you read in context, Judge Cooper's sentencing comments, then he's saying, I'm addressing what you're telling me. I'm looking at this specifically. This is what you've asked me to look at. So no, he has not disregarded background and no, he has not used an improper structure for consideration of the evidence. And I think going back, I believe it was Judge Rushing who said that, well, he has a listing of things, including the background for Mr. Allen that was chronicled and presented that he considered. Well, that would also be any evidence of any kind of psychiatric illness. I would also point out that the evidence of psychiatric illness was not at all conclusive. Even in the PCR, when Mr. Allen is once again evaluated for competency, Dr. Frierson said there were numerous opinions on either side of the fence from reaching into insanity to having malingering. Counsel, can I ask you to clarify? Are you saying that the state experts here were saying this Mr. Allen has no psychological problems at all? That the things like the inpatient psychiatric hospitalizations, that was disputed and the rumination disorder where he re-eats food, that was all disputed? Yes, well, that he re-eats food I do not believe was disputed. Okay, well, that's a fairly serious, right. So everyone was agreeing there is some serious mental health issue here. What was disputed is does it rise to the level of schizophrenia or something that would cause delusions and things like that? Certainly. There was no agreement whatsoever on schizophrenia or something like that. There were also arguments, individual factual arguments on whether something was prompted by some potential delusion or not. For instance, in the roadhouse killing, there was argument that from the defense expert, Dr. Crawford, that that was not part of some delusion. That was because he was mad. So all of this went back into facts of the crime because that's where defense counsel was going. So again, I don't fault Judge Cooper and the PCR court didn't find counsel ineffective for not objecting based on some kind of wrongness in the evaluation. And to step back and just look at it from a global perspective, if counsel objected to the judge looking at the crimes, then they're objecting to their own strategy where they've asked him to look at the crimes to show this man must be mentally ill. Ms. Brown, I don't think that that was the argument that faulted him in what he looked at. I think the record is clear that he considered things and as Judge Harris mentioned, both sides recognized some mental problems to the degree that was disputed by the problem. But here's the question not to you, directly to what was argued by Mr. Joyner. You can consider something, but if the metric you put to the consideration of the evidence is too high or clearly inappropriate, that may be a problem. What I'm saying is that he clearly said he was looking at an Eighth Amendment standard. In other words, you know, it's not a mitigating mitigator unless it would constitute cruel and unusual punishment. And in Florida, as counsel said, that's the highest one. You have to be so out of it that you don't even know you're being killed or even the reason why you're being executed. And then to say just only to the crime or the time of sentencing, the standard is too high. I mean, how can the PCR court find something that the court clearly said? This is what I need to have before you. This will be a mitigator. And that's too high. Isn't that wrong? Well, sir, that doesn't look at it in the way that it was presented to the PCR court. The judge said the PCR court can't change what the judge said. I mean, the difference is one thing. Magic is a knife. You can't mix up, just go put it away because you're on the PCR review. The judge told, in simple English, what my standard was. And he said, it's an Eighth Amendment standard. Cruel and unusual punishment. The four ML would be for me to put you death. That would be the standard. And talked about Ford standards. That's the wrong standard. Forget about whether he, yes, he considered things. But the point is, what is the metric? And the metric is wrong as a matter of law. Do you agree with that? That Ford is not the standard for a mitigator in the death case, or that the Eighth Amendment, unless it reaches Eighth Amendment level, is not a mitigator. Do you agree with that? Ford wouldn't be for competency to be executed. That is not a mitigation. What about the Eighth Amendment? Do you believe this has to rise to the level of an Eighth Amendment type level before it can be a mitigator? I believe that the cases that the judge referenced, including Atkins, talk about the culpability of the defendant. And I believe that is very clear from the he was looking at culpability of the defendant, and he was looking at the character evidence presented to him. And that is bound up not only in background, but diagnosis, conflicting diagnosis, as has been mentioned here today. You're not answering my question. I'm asking you. Do you agree that the Eighth Amendment is the standard for mitigator? I don't believe, well, Your Honor, respectfully, as I understand what you're asking me, I would have to say that the Ford standard is not mitigation. But I don't believe that Judge Cooper used the Ford standard to block mitigation. He used the Ford standard as an example of looking at culpability, looking at a sentence, individualizing the sentence. And that is mitigation. That is sentencing. That's proper sentencing. So he didn't just say Ford, he didn't just say Atkins. He was looking at the reasoning in the cases. What would support retribution? Well, it has to be the character of that defendant. You have to look at him. That's individualized sentencing. So that, Your Honor, respectfully, is a little bit of my hesitation because he didn't just say I'm using a Ford standard. He said, I'm looking at these cases. They're delving in to what the culpability level would be. And that's what he was attempting to do and attempting to do it for. Go ahead, Judge Harris. No, no, no. You go, Judge Gregory. I was just saying, Ford is not a culpability standard. It's saying that you could have done the most horrible of horribles. But it's saying that the point is it makes no difference in terms of retribution if the person doesn't even understand they're being killed. And for what reason? That's what Ford is. Exactly. Retribution. That means can he understand why he's even being executed? And that was the type of global where this case was anything near that in terms of anybody saying that he didn't even understand what was going on. No, that's not even this case. Atkins wasn't this case. Nobody looks so retardation was not even the case. Why would these cases be even in the mix if it was not? What? Exactly what the judge said? This is my standard. You can only judge the court by what the court says. You can't wish something away because you want to finality of a death sentence or any other kind of sentence. Absolutely. And, Your Honor, we have to look at it in context. When we isolate it, we're not being fair to anybody. I'm not saying anything. I'm just saying that's what he said at the sentencing. And he did say that he did. But he said it, Your Honor. And I think this is really critical, and I'm glad we're having this because it's critical because it's an element. It's not dispositive. He's looking at it as what does the Supreme Court tell us? And the Supreme Court tells us that these sentences have to be individualized. We have to look at this individual, this man who the state of South Carolina is seeking a death sentence against. We have to look at him. We have to look at what he did. We have to look at his crimes. We have to look at his background. And Judge Cooper did that and also address specifically what he was asked to address by defense counsel. Defense counsel tied the crime to the mental illness to try to increase the credibility of the mental illness presentation and mitigation. And at the end of the day, Your Honor, this is the problem with the mitigation issue. And that is there are no findings required in mitigation. There is no effect to mitigation that can be defined. But you cannot prevent admissibility, and you cannot prevent consideration. That doesn't mean that you can't consider it one way and consider it another way. You're not limited to a box of consideration for one particular state. You can't define any mitigation. You check no. The court said no. The check no. No or none. No weight. No weight. It doesn't say no weight, counsel. It doesn't say no weight. And I'm glad Judge Gregory raised the form because I am sort of struggling with, given that there was undisputed evidence of some pretty compelling mitigating circumstances here in terms of his sort of the extreme childhood abuse and the very serious mental health issues, putting to one side the dispute over schizophrenia, how do you get to there was no evidence of mitigating circumstances supported by the evidence? Somewhat redundant. But it doesn't say I didn't give it any weight. It says there was none. And then he clarifies, to be clear, the reason I found no conclusive proof of mitigating diagnoses. But as we've discussed, the conflict, there was no conflict as to a whole bunch of very compelling mental health issue evidence. The only thing there was a conflict about was the schizophrenia. So it just looks to me like this form. I mean, I want to give you a chance to address it, but I will tell you my concern is that I'm having trouble reconciling this form with the mental health issues below the level of schizophrenia that, as the judge says, there was nothing there to show that the disease controlled his mind at the time of the crime. It looks to me like the judge is saying, was he suffering from schizophrenic delusions at the time of the crime or not, period. And I'm really having trouble reconciling this form with your account of what happened. So let me stop talking and give you a chance to answer. Thank you, Judge Harris. And I do understand your question, but I think it goes back to the structure that we have in South Carolina. There is never a report of mitigating circumstances that's required from any jury. There is never a direction that you must find mitigating circumstances. That is not the way that our statute works in South Carolina. The only thing we have are, we have a requirement that a finding of at least one, at least one that could be more, but there has to be at least one statutory aggravating circumstance. That is eligibility and that's it. That's all that has to be reported. So what is the form for? Why does the judge, what does it mean when a judge fills out a form and says, I found no evidence of mitigating circumstances, period? The form is governed by 16.3.20. The form is given to the Supreme Court, whether there is a jury or whether there is a judge. So, Your Honor, respectfully, I would think at this point it is helpful for the aggravating circumstances because that's listed out. That's required to be designated. But as far as mitigation, that's any other fact finder. Anybody can take anything as mitigating in favor or against. It's just, it's not a requirement. So that would be too narrow a reading under our statutory scheme in South Carolina. That is not dispositive. That doesn't mean that there's been a rejection. It means that it wasn't weighty enough. And I refer the court back. But I just, that's not what the form says. I mean, I understand what you're saying. You could have a form that says, did you find mitigating evidence that was the mitigating evidence? But that's not this form. So I don't. And other jurisdictions do have a statute that says that the fact finder has to list it out. Our statute does not. We don't. This form is generalized. And again, it's for the judge to fill out whether he's fact finder or whether he's presiding. So it is universal in that way. It is not helpful in determining the mitigation. And at some point you would get into the prohibition of going into deliberations. As I said, Judge Cooper did not have to go into everything that he did in his sentencing order. So we have a glimpse at least into part of his, his consideration. But he did not in any way reject evidence at all. In fact, this was a 10 day sentencing hearing. It was highly contested. There were several mental health experts who testified. Nobody was rejected. And I will not listen to anything. Get out of the courtroom. There was no report that was found inadmissible. There was nothing to that level. So respectfully, I think that the 16320 provisions have to control. And the PCR court was right in looking at this again, not as freestanding, but as an element of the ineffective assistance of counsel claim. And frankly, it would have been inconsistent for counsel to object when they asked the court specifically to look at the crimes and as evidence of mental illness. And I see I'm out of time. You may continue to talk. You may finish. Oh, Your Honor, we will rely on the strength of the state court record in our brief. And I thank you for the court's time. Thank you, Mr Brown. Edwin, you have some time reserved. Thank you, Your Honor. If I may just start with this question of, uh, the South Carolina death penalty law not requiring any findings respectfully opposing counsel is conflating the issue of whether findings need to be recorded in writing with whether they need to be made at all. We've set forth a relevant South Carolina law in both our opening brief and in our reply, and it's clear that mitigating evidence in South Carolina can only be given any significance if it's actually found. It's not surprising that only statutory aggravating circumstances would be required to be designated in writing because those are effectively elements of the crime. Um, and this notion that the judge didn't have to say it doesn't mean that we ignore it. It's basically the same as Eddings. It was a bench sentencing in Eddings as well. The trial judge made the comment that clearly reflected that he was applying an inappropriate standard, and that's exactly what we have here. It's really quite similar. Um, this general notion that, uh, counsel was saying, take the crime into account is not in any way contrary to our argument. There is no suggestion that the judge needed to ignore the circumstances of the crime or that those could play absolutely no role whatsoever into his evaluation of Mr Allen's mental state. It just couldn't be counsel. Yeah, I'm asked out for a second. You know, you argued case where you want, but, you know, I'm surprised you have not mentioned that you can see that this was no problem. Judge Harris raised it about the promise or inducement or lands, whatever, and how that connects with both the volunteers of the plea, uh, as well as ineffective assistance and all those things. Your Honor, I think. Thank you, Your Honor. I do think it's important. I think I agree with that 100% of the point that Judge Harris raised that, uh, that anything that was sort of premised on the idea that, uh, there still needed to be consideration of mitigating evidence in conjunction with this assurance that was made pre trial was totally illusory, given that the trial judge, uh, apparently had a completely incorrect view of what the appropriate consideration of mitigating mental health evidence actually was. So that absolutely supports our involuntariness claim. Claim one. Um, there's no question about it. And I could just if I could just add very briefly, we believe that the state court was unreasonable, both in determining that there was no assurance because they completely ignored this comment, uh, that Miss Pringle, Miss Sampson and Mr Laminac all testified to about there will be no PCR proceeding directly in response to a question about or a statement about. I can't be up there, uh, you know, testifying in a PCR hearing with an assurance. Would you agree? Would you agree that given with, uh, Ms Brown said about the normal practice about how we deal with mitigators and not required to say that in this particular case is particularly important because it was some of the basis. It seemed to be as to weighing that mitigators, whether or not that was gonna be enough to follow through at least an inclination of a life sentence. Do you agree with that? I'm sorry. What I'm saying is that because of the facts of this case would be more particularly important to look at how these mitigators and evidence was pre plea meeting, whatever you want to call it, whether it was I mean, people with some of the Heisman or whatever, but at least there was some indication of at least an inclination on the judge's part, uh, that this might result into a death penalty. Does that make this case more important that you have to look at how and what standard would use to fulfill what the judge at least maybe perhaps was looking for in terms of what level of evidence to assure him that a life sentence would be. Yes, Your Honor. I think it just highlights the degree to which the judge's inappropriate focus on the wrong standard was prejudicial because, as Your Honor noted, he expressed that he was at least perhaps favorably inclined pretrial. And so it just highlights the prejudice that he was informing the wrong thing. Hope that answers your honor's question. That's fine. Well, I interrupted your last minute, so you have anything else to say? Your Honor, I was just gonna very quickly wrap up with, I think, what was, you know, to touch on the claim one about the involuntary plea. Let's say that the second critical, uh, unreasonable determination that the state court made was that Mr Allen did not, in fact, rely or the promise did not induce his plea where he specifically and explicitly testified that he would not have pleaded guilty about his counsel's, uh, advice, and they only advised him to plead guilty because they understood it as an assurance of lives. So that was just what I was gonna wrap up with. You trailed off at the end because they understood it as a what? I'm sorry, Your Honor. I was gonna say that was just what I was gonna wrap up with. That was the second critical, unreasonable determination that the South Carolina Post-Conviction Court made. All right. Thank you. All right. Mr. Edgerton, Ms. Brown, thank you so much for your arguments. We appreciate this. We always like to have good counsel here to help us on these very difficult cases, and you both have done well in doing that. Thank you. You can't come down and shake your hands as we would normally do in our fine Fourth Circuit tradition. But no, we appreciate your arguments. Be safe and stay well. Thank you, Your Honor. Take care.
judges: Roger L. Gregory, Pamela A. Harris, Allison J. Rushing